UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kenny J. St. Louis,

    Plaintiff,

    v.                                             Civil Action No. 2:10-CV-211

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 9, 13)

Plaintiff Kenny J. St. Louis brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm (Doc. 13).

For the reasons stated below, Plaintiff's motion is denied, and the Commissioner's motion is granted. Pursuant to Local Rule 7(a)(6), and no party having made a request for oral argument, the Court finds that oral argument is not required.

**Background**

Plaintiff was born on September 5, 1973, and thus was thirty-three years old on the alleged disability onset date of March 3, 2007. (Administrative Record ("AR") 51, 110, 135, 140.) He completed a bachelor's degree in theater in approximately 1997. (AR 25-26, 146, 493.) His job history consists of working as a dialysis technician, a renal

assistant, a nursing payroll associate, a medical clerk, a retail clerk, a clerical worker, a deli worker, a prep cook, and a waiter. (AR 27-29, 43-44, 141-42, 161-68, 493.) Plaintiff has a malformation of the brain, known as Arnold-Chiari malformation,[1] which was discovered incidentally in 2003 after he was involved in a motor vehicle accident. (AR 313, 405-21.) On March 3, 2007, he underwent brain surgery to address the condition, which had been causing him moderate headaches and dizziness, among other possible symptoms. (*Id.*) In addition to the neurologic issues, Plaintiff has received treatment for various other ailments, including degenerative disc disease, carpal tunnel syndrome, and depression.

In July 2008, Plaintiff filed an application for disability insurance benefits, which was denied initially and on reconsideration. (AR 51-62, 110-11.) Pursuant to that application, Plaintiff alleges that, starting on March 3, 2007, the date of his brain surgery, he became unable to work as a result of the following conditions: Arnold-Chiari malformation; increased intracranial pressure; involuntary muscle-twitching; balance/coordination problems; dizziness; vertigo; nausea; numbness and tingling in the head, neck, and limbs; spinal stenosis[2]; "upper bilateral recessed stenosis"; and depression. (AR 135, 140.) Plaintiff claims that, due to these conditions, he is unable to

---

[1] "Arnold-Chiari malformation is a defect in which a part of the cerebellum . . . is elongated and projects into the upper cervical canal. Classification as type I or type II is based on the extent of the anomaly. Type I is often asymptomatic and is not associated with hydrocephalus[, which is characterized by swelling of the cerebral ventricles and an accumulation of cerebrospinal fluid within the skull], whereas hydrocephalus is present in about 50 percent of cases of type II . . . ." LORNE LABEL, M.D. & SILVIA HINES, ATTORNEY'S TEXTBOOK OF MEDICINE 17.27 (3d ed. 2011), *available at* Lexis ATBMED.

[2] "Spinal stenosis" is defined as "[a] narrowing of the spinal canal (the long channel within the bony structure of the spine), usually as a result of . . . degenerative changes of the bony structures." J.E. SCHMIDT, ATTORNEYS' DICTIONARY OF MEDICINE S-108246 (2009), *available at* Lexis DICMED.

walk without a cane or walker; his equilibrium is disturbed, causing him to stumble and fall over; he experiences significant tremors in his limbs and hands making it difficult to hold objects; and he is unable to drive for long distances. (AR 140, 149.) Although Plaintiff claims he "bec[a]me unable to work" because of his conditions on March 3, 2007, he states that he "returned to full[-]time work" approximately three months later, in June 2007 and "was promoted" a month after that, in July 2007. (AR 140.) It was not until November 10, 2007, over eight months after his alleged onset date, that he stopped working. (*Id.*)

On April 13, 2010, Administrative Law Judge ("ALJ") Paul Martin conducted a hearing on Plaintiff's application. (AR 20-50.) Plaintiff appeared and testified at the hearing, and was represented by counsel. (*Id.*) Additionally, vocational expert Ralph Richardson was present at the hearing. (AR 42-50.) On April 20, 2010, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged onset date of March 3, 2007 through the date of the decision. (AR 7-14.) The Decision Review Board selected the ALJ's decision for review but did not complete its review during the time allowed, making the ALJ's decision final. (AR 1-3.) Having exhausted his administrative remedies, Plaintiff filed the Complaint in this case on September 7, 2010. (*See* Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

3

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step commands that the ALJ determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Martin first determined that, although Plaintiff had engaged in substantial gainful activity that was not an unsuccessful work attempt after the alleged onset date, "given the limited period" of such activity, he would

proceed through the subsequent steps of the sequential evaluation. (AR 10.) At step two, the ALJ found that Plaintiff had the medically determinable impairments of discogenic and degenerative disc disease of the lumbar spine, a Chiari I malformation with hydrocephalus, and depression. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled a listed impairment. (AR 10-11.)

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), "allowing for the alteration of sitting, standing, and walking at will, with no climbing of ladders, and otherwise occasional postural activities, frequent fingering and feeling, and no exposure to unprotected heights or dangerous machinery." (AR 11.) The ALJ continued: "[Plaintiff] would be able to understand, remember and carry out moderately complex, four to five step instructions and could work at a regular pace, but could not tolerate fast[-]paced production requirements. He would, at times, also require basic reminders about tasks up to once hourly throughout the work day." (*Id.*) Based on this RFC and other vocational characteristics, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a medical clerk. (AR 13.) The ALJ concluded that Plaintiff had not been under a disability from the alleged onset date of March 3, 2007 through the date of the decision. (AR 13-14.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

5

423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*,

6

66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## **Analysis**

I.  **Opinions from "Other Sources"**

Plaintiff claims that the ALJ failed to give proper weight to the evidence provided by Licensed Clinical Mental Health Counselor Gretchen Lewis, or to provide an explanation for the weight given to such evidence, in accordance with Social Security Ruling ("SSR") 06-03p. The Commissioner asserts that the ALJ did not abuse his discretion with respect to the weight afforded to Lewis's opinion, and that substantial evidence supports the ALJ's decision. The Court agrees with the Commissioner.

The record documents that Lewis provided regular mental health treatment in the form of therapy sessions for Plaintiff from approximately August 2009 through March 2010. (*See* AR 813-31.) On March 16, 2010, Lewis completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("MSS"), opining therein that Plaintiff had "marked" impairments in eight of ten activities, including but not limited to making judgments on simple work-related decisions; understanding and remembering complex instructions; interacting appropriately with the public, supervisors, or co-workers; and responding appropriately to usual work situations and to changes in a routine work setting. (AR 810-11.) Lewis identified diagnoses of depression and anxiety, severe medical issues such as brain and back surgery, occupational problems, economic problems, and "other psychosocial and environmental problems" as supportive

7

of her assessment. (AR 811.) She concluded that, given Plaintiff's impairments, he would be absent from work "more than 4 days per month." (AR 812.)

In determining Plaintiff's RFC, the ALJ referenced the "recent marriage counseling" that Plaintiff underwent with Lewis. (AR 13.) The ALJ discounted Lewis's opinion on the grounds that "she is not an acceptable medical source and largely seems to be basing her assessment on therapy which focuses on relationship issues rather than individual mental health therapy." (*Id.*) The record does not reflect that Plaintiff was engaged in formal "marriage counseling" with Lewis. In fact, Lewis's own treatment notes from a therapy session with Plaintiff on February 23, 2010 state that Plaintiff's wife "got her own therapist[,]" and that Plaintiff and his wife together were "see[ing] a marriage counselor[.]" (AR 814.) Therefore, the ALJ's reference to "marriage counseling" between Lewis and Plaintiff was incorrect.

The error was harmless,[3] however, given that substantial evidence exists in the record to support the ALJ's stated reasons for affording minimal weight to Lewis's opinion – first, because Lewis is not an "acceptable medical source," and second, because Lewis's opinions are largely based on her treatment of Plaintiff's "relationship issues." (AR 13.) A review of Lewis's treatment notes plainly reveals that the major focus of such treatment was on Plaintiff's relationship with his wife. (*See, e.g.,* AR 813-18, 820-25, 827.) For example, on August 11, 2009, Lewis documented that Plaintiff "felt unappreciated at home [and] his wife was feeling the same way," and that Plaintiff and

---

[3] *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

8

his wife "had a major blow-up[.]" (AR 827.) On September 1, 2009, Lewis noted that Plaintiff "reflects on his marriage and realizes that he and his wife have overcome a lot of obstacles, but there are many more that they have to get through." (AR 825.) On November 1, 2009, Lewis stated that Plaintiff "just had a big blow-up w[ith] his wife[,]" and "states that [he and his wife's] level of intimacy is really lacking[.]" (AR 821.) Finally, on December 20, 2009, Lewis recorded that Plaintiff "is able to articulate how his relationship feels one-sided when it comes to openly sharing love and affection." (AR 818.) It is true, as pointed out by Plaintiff, that Lewis's written "Treatment Plan" for Plaintiff does not focus on marriage counseling, and includes diagnoses of "[d]epression and [a]nxiety complicated by [l]ow [s]elf-[e]steem and [m]edical [c]onditions[.]" (AR 828.) However, the document titled "Treatment Plan" appears to include boilerplate lists of objectives and interventions with no individualized approach to treatment (*see* AR 828-31), whereas Lewis's session notes more accurately reflect the substance of her particular treatment of Plaintiff (*see* AR 813-27).

Importantly, Lewis was a treating mental health counselor and not a treating psychologist or other "acceptable medical source," as defined in the regulations. 20 C.F.R. § 404.1513(a). Therefore, the ALJ was not required to evaluate Lewis's opinion in the same manner as required under the treating physician rule. 20 C.F.R. § 404.1527(d)(2). SSR 06-03p explains that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "Acceptable medical sources" are defined in the regulations to include licensed physicians, psychologists,

9

optometrists, podiatrists, and qualified speech-language pathologists, 20 C.F.R. § 404.1513(a), whereas sources such as nurse practitioners, chiropractors, and therapists are defined as "other sources," 20 C.F.R. § 404.1513(d)(1). The Second Circuit explained that, "while the ALJ is certainly free to consider the opinions of . . . 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citation omitted); *see Duran v. Comm'r of Soc. Sec.*, 296 F. App'x 134, 136 (2d Cir. 2008) (finding no error in ALJ decision to disregard assessment of "medical records physician" because it was not from an acceptable medical source and did not include clinical findings).

Given the applicable law, the ALJ was free to discount the assessment of Lewis in favor of the objective findings of medical doctors. And the Court finds that the ALJ's decision to do so was proper, for two principal reasons. First, Lewis's own treatment notes do not support her opinion in the MSS that Plaintiff's mental impairments were so severe that he would be absent from work for more than four days each month. Rather, those notes document mild impairment, stating for example that Plaintiff was "feel[ing] so much more positive about his whole life" (AR 813); that "things have been going great" and Plaintiff "has made progress maintaining a brighter outlook, has begun eating healthy and exercising and plans to try acting again" (AR 814); that Plaintiff and Lewis had discussed Plaintiff's "progress on a personal level and [Plaintiff] claim[ed] that he [was] beginning to think about the Barbershop [Q]uartet and acting" (AR 822); and that "[Plaintiff] is really motivated to change and is showing great progress" (AR 823).

10

Lewis's treatment notes consistently indicate that Plaintiff was attentive, maintained good eye contact, exhibited logical thought process, and demonstrated adequate impulse control and judgment. (*See, e.g.*, AR 813, 817, 824, 827.) It is difficult to reconcile these contemporaneous notations of relatively mild impairment, documented for the purpose of treating Plaintiff, with the markedly-limited RFC assessment contained in Lewis's MSS.

Secondly, other objective medical evidence supports the ALJ's decision to afford little weight to Lewis's opinion that Plaintiff's mental impairments (namely his depression) would prevent him from working. Preliminarily, the vast majority of the medical records relate to Plaintiff's physical, not mental, problems, addressing mostly Plaintiff's headaches, dizziness, tremors, and back pain. Moreover, the bulk of the medical records which address Plaintiff's depression, indicate that it was not severely limiting and was being effectively treated with counseling and medication. (*See* AR 397-98, 436, 494, 643, 762, 806.) For example, in November 2006, Physician's Assistant ("PA") Louis Dubois noted that Plaintiff "continues to receive excellent control" of his depression "from Lexapro," and that Plaintiff reported that the Lexapro was "working great." (AR 436.) In May 2007, PA Vivian Calobrisi similarly noted that Plaintiff's depression was being controlled with Lexapro. (AR 397-98.) In December 2008, consultative psychologist Dr. Dennis Reichardt opined that Plaintiff exhibited no obvious reductions in mental functioning; that Plaintiff's symptoms of depression were "related to his various perceived physical and mental challenges"; and that Plaintiff's "primary disabling conditions would appear to be in the physical realm[.]" (AR 494.) Likewise, during the same month, Dr. Frank Provato, a specialist in internal medicine, noted that

11

Plaintiff's symptoms of depression "do not appear to be a prominent part of his clinical picture today." (AR 643.) A June 2009 note from neurosurgeon Dr. Michael Horgan states that Plaintiff reported he was "at peace" with all of his "multitude of issues" other than his low back pain. (AR 762.) In September 2009, Dr. Provato stated that the course of Plaintiff's depression had been decreasing, and although Plaintiff reported feeling depressed and restless at times, he was "not sad, bad, down, blue or tired." (AR 806.) Dr. Provato further reported that Plaintiff's depression symptoms "are in remission with their current therapy" of counseling and medication. (*Id.*)

In sum, the ALJ recognized Lewis's opinion, and explained his reasoning for affording minimal weight to it. Although that explanation was not entirely accurate, the error was harmless, as substantial evidence supports the ALJ's determination that Lewis's assessment of the level of Plaintiff's depression "is . . . overstated relative to the evidence of record." (AR 13.)

## II.     Plaintiff's Ability to Work on a Regular and Continuing Basis

Citing to SSR 96-8p, Plaintiff argues that the ALJ should have discussed: (a) Plaintiff's testimony that he would not be able to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and (b) mental health counselor Lewis's opinion that Plaintiff would miss four or more days of work each month. (*See* Doc. 9 at 8.) SSR 96-8p provides that an ALJ's RFC assessment must include a narrative discussion of the claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and must describe "the maximum amount of each work-related activity the individual can perform based on the evidence

12

available in the case record." SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996). The ruling further requires that the ALJ's RFC assessment "be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, reports of daily activities, and medical source statements, among other things. *Id.* at *5.

ALJ Martin's decision properly identified Plaintiff's functional limitations and restrictions in the context of making the assessment that Plaintiff has the RFC to perform "sedentary work" (AR 11), which is defined in the regulations as follows: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The ALJ included additional limitations on Plaintiff's ability to do sedentary work, stating that he would need to alternate sitting, standing, and walking; could not climb ladders; could not be exposed to unprotected heights or dangerous machinery; could not tolerate fast-paced production requirements; and would, at times, require basic reminders about tasks, up to once hourly throughout the workday. (AR 11.)

In making this RFC assessment, the ALJ considered all of the relevant evidence. His opinion discussed Plaintiff's allegations of pressure inside his head; tingling in his arms, hands and feet; diminished short-term memory; muscle spasms with tremors; and difficulties with coordination, gait, and balance. (AR 12.) In considering the other

13

evidence, however, including the objective medical evidence and reports of Plaintiff's daily activities, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (AR 12-13.) Particularly, the ALJ noted that, with respect to Plaintiff's back pain, the medical records documented improvement with treatment, and that, as of February 2010, Plaintiff was "exercising three to four times per week." (AR 12.) Substantial evidence, cited in the ALJ's decision, supports these findings. (*See* AR 793, 797, 799, 806.) Regarding Plaintiff's Chiari malformation and related cognitive problems, the ALJ cited medical evidence reflecting that Plaintiff's symptoms had been stable since undergoing brain surgery; his tremors had resolved; and his headaches were relatively mild. (AR 12-13.) Again, substantial evidence, cited in the ALJ's decision, supports these findings. (*See* AR 764, 851.)

With respect to Plaintiff's alleged memory loss and cognitive impairment, the ALJ correctly noted that the record is "largely devoid of any supporting documentation" (AR 13), and properly relied on the opinion of consulting psychologist Dr. Reichardt, who found no obvious deficits in mental functioning (*see* AR 494). Regarding Plaintiff's depression, the ALJ correctly noted that Dr. Reichardt's opinion indicates it is not significantly limiting, especially given the Doctor's opinion that Plaintiff's "primary disabling conditions would appear to be in the physical realm . . . ." (*Id.*; *see* AR 13.) Moreover, as discussed in detail above, mental health counselor Lewis's treatment notes reflect that Plaintiff's depression was being successfully treated, to such an extent that Plaintiff was even talking about "try[ing] acting again[.]" (AR 814; *see also* AR 813,

815-27.)

Thus, the Court finds that the ALJ satisfied his duties under SSR 96-8p with respect to Plaintiff's ability to work on a regular and continuing basis, and that substantial evidence supports the ALJ's decision on that issue.

## **Conclusion**

For these reasons, Plaintiff's motion (Doc. 9) is DENIED, and the Commissioner's motion (Doc. 13) is GRANTED. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 15th day of June, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge